UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDEL ALCANTAR SOTO,<br><br>    Petitioner,<br><br>    v.<br><br>M.E. SPEARMAN, Warden,<br><br>    Respondent. | No.  2:17-cv-1002 TLN AC P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition which challenges petitioner's 2015 conviction for multiple sex offenses against minor victims.  ECF No. 1.  Respondent has answered.  ECF No. 14.  Petitioner did not file a traverse.

BACKGROUND

I.   Proceedings In the Trial Court

Petitioner was charged in Yolo County Superior Court with oral copulation of a child, two counts of lewd acts on a child, and child endangerment.  CT 72-76 (amended information).[1]

The case proceeded to trial.  Because the only claim presented in federal habeas addresses jury selection, the evidence presented to the jury need not be summarized here.  On April 3, 2015,

---

[1] "CT" refers to the Clerk's Transcript on Appeal, Lodged Doc. No. 1 (ECF No. 15-1).

1

petitioner was found guilty on all counts and the jury found a multiple victim allegation to be true.  CT 133, 137-144.  Petitioner's post-trial motion to dismiss one count as time-barred was granted by the superior court on June 26, 2015, and petitioner was sentenced to fifteen years to life imprisonment.  CT 204-207.

## II. Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on November 2, 2016.  Lodged Doc. 10 (ECF No. 15-10).  The California Supreme Court denied review on January 11, 2017.  Lodged Doc. 12 (ECF No. 15-12).

Petitioner filed no petitions for state habeas relief.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99 (2011).  State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100.

////

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 563 U.S. at 102.

////
////
////
////

# DISCUSSION

I.     Petitioner's Allegations and Pertinent State Court Record

The petition presents a single claim for relief under Batson v. Kentucky, 476 U.S. 79 (1986). The factual basis for the claim was set forth as follows by the California Court of Appeal:[2]

> Voir dire was conducted in multiple rounds of prospective jurors. Both sides started with 20 peremptory challenges. In the first round, 18 potential jurors were called. The next five rounds each consisted of seven individuals. In the final round, six potential alternates were called, and both sides received two additional peremptory challenges. N.G. was in the fifth of the seven groups. At this point, two jurors had been excused for cause, and the prosecution had exercised 14 peremptory challenges to the defendant's 12.
>
> During voir dire, N.G. provided some requested biographical information: "My name is [N.G.] I'm a resident of Yolo County. I live in West Sacramento. I'm a dental assistant. I live with my mother, she's a supervisor of a recycling center. And [I have] no kids."
>
> After her group was examined, the prosecutor excused one juror and defense counsel excused two more before the prosecutor excused N.G. Then, defendant made a Batson/Wheeler motion. Defense counsel explained the basis for his motion: "[N.G.] is an African American woman. Nothing she said could have reasonably led to a peremptory challenge. She is working as a dental assistant, her mother is a supervisor at a recycling place. The only reasonable conclusion I have that she was struck—I don't believe there was any race-neutral reason to strike her."
>
> The court found defense counsel made a prima facie showing, and invited the prosecutor to explain his reasons for excusing N.G.
>
> The prosecutor explained that N.G. "seems like she has very little life experience. She seems very young.... [Y]oung adults are not a recognized group for purposes of Wheeler. I have concern about a number of jurors for that reason.
>
> "I would also note for the record, and this is unseenly [sic], that she, [N.G.], is morbidly obese. Extremely obese. Generally, I have concern about people who are morbidly obese, how they might interact with other jurors, what motivates them. It's my own—it's my own thing. And the fact when I was talking to her I got the sense she wasn't fully answering the questions. And I actually asked her that, 'Is

---

[2] The undersigned has independently reviewed the record and finds the California Court of Appeal's summary to be accurate. The transcript of jury selection is found at Lodged Doc. 5 (ECF No. 15-15), the Reporter's Augment[ed] Transcript on Appeal. The Batson hearing is at Aug. RT 177-182 (ECF No. 15-15 at 180-185).

> there something else you wanted to say?' And she said something like, 'Well, no. I thought I was waiting for you to get done with your questions.'" […]
>
> The prosecutor also specifically denied exercising his challenge because N.G. was African American.
>
> Defense counsel began his rebuttal by "concede[ing]" that N.G. is obese and pivoting to his assertion that "[t]here's at least three or four different jurors who are younger than [N.G.]" Defense counsel also argued the prosecutor's claim that N.G. lacked life experience was "not supported by the record, at least compared to other jurors who [defense counsel] has not challenged." Defense counsel did not address the prosecution's characterization of N.G.'s responsiveness or their exchange. Defense counsel did add, "[I]f [the prosecutor] struck her because she's obese, the Court's going to have to make a decision whether that's a sufficient race-neutral reason. I confess, I do not know the case law on striking obese people, whether they're a protected class or whether there's a sufficient race-neutral reason to overcome a Batson/Wheeler challenge. But she's not the only overweight person on the panel. It's—it seems like a suspicious reason and I ask the Court to sustain the challenge." […]
>
> The trial court denied the motion: "I do not find that the evidence and arguments supports a conclusion that there has to be [sic] purposeful discrimination in exercising the challenge against [N.G.]"

Lodged Doc. No. 10 at 2-4 (footnotes omitted).

   II.   The Clearly Established Federal Law

Purposeful discrimination on the basis of race in the exercise of peremptory challenges violates the Equal Protection Clause of the United States Constitution. Batson, 476 U.S. 79; Johnson v. California, 545 U.S. 162 (2005). Batson claims are evaluated under a three-step test:

> First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." [Citations]. Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. [Citations.] Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." [Citation.]

Johnson, 545 U.S. at 168 (footnote omitted); see also Tolbert v. Gomez, 190 F.3d 985, 987-88 (9th Cir. 1999) (en banc).

////

At the third step of Batson, "the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." Purkett v. Elem, 514 U.S. at 765, 768 (1995). Although the burden remains with the defendant to show purposeful discrimination, the third step of Batson primarily involves the trier of fact. After the prosecution puts forward a race-neutral reason, the court is required to evaluate "the persuasiveness of the justification." Id. To accept a prosecutor's stated nonracial reasons, the court need not agree with them. The question is not whether the stated reason represents a sound strategic judgment, but "whether counsel's race-neutral explanation for a peremptory challenge should be believed." Hernandez v. New York, 500 U.S. 352, 365 (1991) (plurality opinion). This credibility determination must be made in light of the totality of the relevant facts about a prosecutor's conduct. Batson, 476 U.S. at 94; see also Hernandez, 500 U.S. at 363.

In considering whether a state court's decision is "contrary to" or "an unreasonable application of" Batson under § 2254(d)(1), the U.S. Supreme Court has recognized that Batson clearly establishes the requirement that courts perform a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Murray v. Schriro, 745 F.3d 984, 1004 (2014) (quoting Batson, 476 U.S. at 93). State courts disobey this clearly established requirement if they "'rubberstamp' a prosecutor's proffered race-neutral explanation for exercising a disputed peremptory strike," or "misstate[ ] the test," or "impermissibly rel[y] on an erroneous factor." Id. at 1005.

   III.   The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The Court of Appeal ruled in relevant part as follows:

> Defendant contends the trial court's ruling violated his right to equal protection under the Fourteenth Amendment to the United States Constitution (Batson, supra, 476 U.S. at p. 89) and his right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution

([People v.] Wheeler, supra, 22 Cal.3d [258] at pp. 276–277 [1978]). "The exclusion by peremptory challenge of a single juror on the basis of race or ethnicity is an error of constitutional magnitude requiring reversal." (People v. Silva (2001) 25 Cal.4th 345, 386 (Silva).)

The law applicable to Batson/Wheeler claims is well-established: "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge based on race. Second, if the showing is made, the burden shifts to the prosecutor to demonstrate that the challenges were exercised for a race-neutral reason. Third, the court determines whether the defendant has proven purposeful discrimination. The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." (People v. Lenix (2008) 44 Cal.4th 602, 612–613; accord People v. Mills (2010) 48 Cal.4th 158, 173.)

In this case, only the third step is at issue. "At the third stage of the Wheeler/Batson inquiry, 'the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.' [Citation.] In assessing credibility, the court draws upon its contemporaneous observations of the voir dire. It may also rely on the court's own experiences as a lawyer and bench officer in the community, and even the common practices of the advocate and the office that employs him or her." (People v. Lenix, supra, 44 Cal.4th at p. 613, fn. omitted.)

We review the trial court's determinations for substantial evidence. (People v. Lenix, supra, 44 Cal.4th at p. 613; see also Foster v. Chatman (2016) —— U.S. —— [136 S.Ct. 1737, 1747, 195 L.Ed.2d 1, 13] (Foster) [explaining the third step "turns on factual determinations, and, 'in the absence of exceptional circumstances,' we defer to state court factual findings unless we conclude that they are clearly erroneous"].) "We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. [Citation.] So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal." (People v. Burgener (2003) 29 Cal.4th 833, 864.) The trial court here did not make explicit findings regarding the prosecutor's stated reasons for striking N.G. However, "[w]hen the trial court has inquired into the basis for an excusal, and a nondiscriminatory explanation has been provided, we ... assume the court understands, and carries out, its duty to subject the proffered reasons to sincere and reasoned analysis, taking into account all the factors that bear on their credibility." (People v. Mai (2013) 57 Cal.4th 986, 1049, fn. 26.) Likewise, "[w]hen the prosecutor's stated reasons are both inherently plausible and supported by the record, the trial court need not question the prosecutor or make detailed findings. But when the prosecutor's stated reasons are either unsupported by the

7

record, inherently implausible, or both, more is required of the trial court than a global finding that the reasons appear sufficient." (Silva, supra, 25 Cal.4th at p. 386.)

Defendant's assertion of error rests on his invocation of this latter principle from Silva, but he has not demonstrated that the prosecutor's explanation was implausible or unsupported by the record such that more detailed findings by the trial court were required. Here, the prosecutor based his decision on a totality of factors. "Trial lawyers recognize that it is a combination of factors rather than any single one which often leads to the exercise of a peremptory challenge." (People v. Johnson (1989) 47 Cal.3d 1194, 1220.) Defendant attacks each of the prosecution's stated factors individually, and we conclude his arguments neither separately nor collectively persuade.

Defendant does not dispute that N.G. was in fact young and appeared to lack life experience. Instead, he contends this was a pretextual explanation because other jurors were also young and lacked life experience. Defendant relies primarily on Foster, supra, 195 L.Ed.2d 1 and Snyder v. Louisiana (2008) 552 U.S. 472 (Snyder) to support this claim. With respect to Foster, defendant quotes from a passage in which the United States Supreme Court, after holding that several of the prosecution's stated reasons for striking a particular potential juror were contradicted by the record, observed that other explanations for striking the juror—including the juror's age—"while not explicitly contradicted by the record, are difficult to credit because the State willingly accepted white jurors with the same traits that supposedly rendered [the excused panelist] an unattractive juror." (Foster, supra, at p. 15.) In particular, this excused African–American juror "was 34, and the State declined to strike eight white prospective jurors under the age of 36." (Id. at p. 16.) In Snyder, the United States Supreme Court found one of the prosecutor's stated explanations for why he excused a particular African–American juror, J. Brooks, pretextual for similar reasons. (Snyder, supra, at pp. 479–485.) The prosecutor used five of his 12 peremptory challenges to eliminate all of the African–American prospective jurors from the panel. (Id. at pp. 475–476.) The prosecutor said he dismissed Brooks in particular because: (1) Brooks looked nervous during questioning and (2) he had expressed concern about jury service because he was a student-teacher and was missing classroom time. (Id. at pp. 478, 480.) The Supreme Court decided it could not presume the trial court credited the prosecutor's assertion regarding Brooks' nervousness instead of basing its ruling on the second justification. (Id. at p. 479.) As to the second justification, the court stated, "[t]he implausibility of this explanation is reinforced by the prosecutor's acceptance of white jurors who disclosed conflicting obligations that appear to have been at least as serious as Mr. Brooks'." (Id. at p. 483.) In our case, the prosecutor's explanation for why he excused N.G. is neither implausible nor difficult to credit. The prosecutor admitted he had concerns about other jurors based on their youth as well. And N.G. was in one of the final groups of prospective jurors: "[T]he particular combination or mix of jurors which a lawyer seeks may, and often does, change as certain jurors are removed or seated in

8

the jury box. It may be acceptable, for example, to have one juror with a particular point of view but unacceptable to have more than one with that view." (People v. Johnson, supra, 47 Cal.3d at p. 1220.) And critically, unlike in Foster and Snyder, the prosecutor here relied equally on other factors that were supported by the record.

In particular, the prosecutor made the observation, which he characterized as unseemly, that N.G. was "morbidly obese." He explained he has "concern about people who are morbidly obese, how they might interact with other jurors, what motivates them. It's my own—it's my own thing." Defendant asserts this is a suspicious justification. We disagree. It is supported by the record and not inherently implausible. (See People v. Johnson, supra, 47 Cal.3d at p. 1218 [prosecutor explained in part that one excused juror "was overweight and poorly groomed, indicating that she might not have been in the mainstream of people's thinking"]; see also People v. Howard (1992) 1 Cal.4th 1132, 1208 (conc. & dis. opn. of Kennard, J.) [prosecutor's statement that juror was "'grossly overweight, appeared unclean and wore an excess of cheap jewelry'" were "factors he believed might prevent effective interaction with other jurors" was "plausible, and there is no apparent reason why we should reject [it]"].) And while defense counsel also argued other jurors were "overweight," there is no suggestion that the fact that N.G. was "morbidly obese" coupled with her youth did not make her unique among the jurors. (See People v. Mai, supra, 57 Cal.4th at p. 1051 ["Nothing indicates the prosecutor was wrong in suggesting that when [the excused panelist's] age, familial status, and death penalty views were considered together, she was unique among the jurors who had been evaluated at the time the prosecutor excused her"].) In short, the record adequately supports the prosecutor's explanation of the race-neutral reasons that collectively led him to exercise a peremptory challenge against N.G.

Defendant also notes it appears from the record the prosecutor misattributed some statements made by a different juror to N.G. But a genuine mistake—even one that goes unnoticed in the trial court—is a race-neutral reason. (People v. Williams (2013) 56 Cal.4th 630, 661.) Accordingly, our Supreme Court rejected a similar challenge based largely on Silva in People v. Jones (2011) 51 Cal.4th 346, 361. In that case, defendant argued on appeal that the prosecutor misstated one of the excused juror's answers while explaining the justification for a peremptory challenge. (Id. at p. 366.) At the trial court, defense counsel declined to comment on the prosecutor's explanations for exercising his peremptory challenges, "thus suggesting he found the prosecutor credible." (Id. at p. 361.) Our Supreme Court held that "[u]nder the circumstances, the court was not required to do more than what it did." (Ibid.) It also found no basis to overturn the trial court's ruling denying defendant's motion: "The purpose of a hearing on a Wheeler/Batson motion is not to test the prosecutor's memory but to determine whether the reasons given are genuine and race neutral. 'Faulty memory, clerical errors, and similar conditions that might engender a "mistake" of the type the prosecutor proffered to explain his peremptory challenge are not necessarily associated with

9

> impermissible reliance on presumed group bias.' [Citation.] This 'isolated mistake or misstatement' [citation] does not alone compel the conclusion that this reason was not sincere." (Id. at pp. 366, 368.) Likewise, here, the prosecutor accurately described an exchange that occurred. No one questioned the sincerity of his recollection on the record. Under these circumstances, the trial court did not abuse its discretion in declining to make more detailed findings or denying defendant's Batson/Wheeler motion.

Lodged Doc. No. 10 at 4-9 (footnotes omitted).

### IV. Objective Reasonableness Under § 2254(d)

No part of the state court's adjudication of this issue is contrary to, or constitutes an unreasonable application of, Batson and its progeny. The Batson test is correctly stated and the court conducted the third step inquiry as required by clearly established federal law, evaluating the credibility of the prosecutor's proffered race-neutral justification in light of the totality of relevant facts. See Hernandez, 500 U.S. at 363, 365. The appellate court considered the defense argument that reliance on N.G.'s youth was pretextual, and it found an inference of pretext to be unsupported in light of (1) the point in jury selection at which N.G was questioned and excused, and (2) factors that distinguished N.G. from other jurors. These are not objectively unreasonable bases on which to reject a pretext argument. The state court's discussion of Foster v. Chatman, 578 U.S. 488 (2016) and Snyder v. Louisiana, 552 U.S. 472 (2008), supra, accurately described the facts and holdings of those cases and distinguished the facts of the present case in ways that are supported by the record.

Furthermore, it was not objectively unreasonable for the appellate court to conclude that the prosecutor's mistaken attribution of certain statements to N.G.[3] did not compel a finding of pretext. There is no hint in the record of anything the prosecutor did or said, whether related to N.G. or otherwise, that reflected concern about race—let alone racial animus. Accordingly, there is no basis for an inference that the error was anything other than an honest mistake. Certainly

////

---

[3] As noted above, the prosecutor stated at the Batson hearing that N.G. had been reticent in answering questions and that he had had to prompt her. This voir dire exchange had in fact involved a different juror. See Aug. RT (Lodged Doc. 5) at 170.

there is no basis for a conclusion that the court of appeal's finding in this regard constituted an objectively unreasonable determination of fact or law.

Ultimately, the appellate court affirmed the finding of the trial court that the totality of circumstances did not support a finding of purposeful discrimination. There is no basis for this court to disturb that ruling. As the Court of Appeal reasonably found, the record is sufficient to uphold the prosecutor's claim that he was influenced by N.G.'s combination of youth and morbid obesity, rather than by race. Whether or not rejection of a prospective juror on the basis of obesity is appropriate, or fair, or strategically sound, it is not forbidden by Batson. The question for the trial court, and for the Court of Appeal, was not whether this was a proper basis to excuse N.G. but whether it was the real reason that the prosecutor excused her. See Hernandez, 500 U.S. at 365. On the basis of the record that was before the Court of Appeal, it was not objectively unreasonable to affirm the trial court's implicit credibility finding. Moreover, this court's independent review of the jury selection transcript reveals no evidence of racial bias on the part of the prosecutor, whether related to N.G. or otherwise, and no indications that anything about the prosecutor's demeanor created a question about his credibility.

In sum, the state appellate court correctly stated the standard that applies under Batson, evaluated the prosecutor's proffered race-neutral explanation for striking N.G. in light of all relevant circumstances, and relied on no impermissible factor. Accordingly, the opinion of the state court cannot be found objectively unreasonable under clearly established federal law. See Murray, 745 F.3d at 1005. Federal habeas relief is therefore barred under § 2254(d).

## CONCLUSION

For all the reasons explained above, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections,

he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 7, 2022.

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE